IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> THE CARLSTAR GROUP LLC, <br><br> Defendant. | CASE NO. <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Harold Simmons, Timothy Patty, and a class of other qualified manufacturing employees with disabilities ("Aggrieved Individuals") who were adversely affected by such practices. As alleged with greater particularity below, since at least January 2020, Defendant, The Carlstar Group LLC, violated the ADA when it denied employment opportunities to manufacturing employees who lawfully used certain prescription medications, including narcotics and opioids, to treat their disabilities and discharged them in violation of 42 U.S.C. § 12112(a). In addition, Defendant's practice of denying employment

opportunities to these manufacturing employees was a qualification standard or other selection criterion that screened out or tended to screen out the Aggrieved Individuals because of their disabilities and is not job related and consistent with business necessity, in violation of 42 U.S.C. §§ 12112(b)(3) and 12112(b)(6). In the alternative, Defendant failed to make reasonable accommodations to the known physical limitations of the Aggrieved Individuals, in violation of 42 U.S.C. § 12112(b)(5)(A).

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Tennessee.

## PARTIES

3. Plaintiff Equal Employment Opportunity Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been an employer engaged in industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5) and (7).

5. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Harold Simmons and Timothy Patty timely filed charges of discrimination (Charge Nos. 846-2021-04710 and 494-2020-02618, respectively) with the Commission. Both charges alleged violations of Title I of the ADA by Defendant.

7. On April 11, 2023, the Commission issued to Defendant Letters of Determination finding reasonable cause to believe that Defendant violated the ADA with respect to Simmons, Patty, and other aggrieved individuals.

8. The Commission invited Defendant to join with it in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letters of Determination.

10. The Commission was unable to secure from Defendant conciliation agreements acceptable to the Commission.

11. On May 18, 2023, the Commission issued Notices of Failure of

Conciliation to Defendant.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL BACKGROUND

13. Defendant operates multiple manufacturing facilities in Clinton, Tennessee, Jackson, Tennessee, and Aiken, South Carolina.

14. Since at least January 2020, Defendant has had a practice of denying employment opportunities to manufacturing employees if it learns those employees are lawfully taking certain prescription medications, including narcotics and opioids, for the treatment of disabilities, even after such employees are medically cleared to perform their job duties.

15. Harold Simmons and Timothy Patty worked as heavy machine operators at Defendant's Clinton, Tennessee facility.

16. Simmons and Patty have physical impairments that substantially limited one or more major life activities and / or had a record of such impairments.

    a. Simmons sustained long-term injuries to his back and neck in a car accident. As a result of these impairments, Simmons was substantially limited in one or more major life activities, including but not limited to sleeping and walking.

    b. Patty sustained long-term injuries to his back and neck in multiple car accidents and was diagnosed with spondylosis, L5-S 1 disk degeneration facet joint arthritis, and lumbar dislocation. As a result

4

of these impairments, Patty was substantially limited in one or more major life activities, including but not limited to sleeping, lifting, and walking.

17. Simmons and Patty worked for Defendant for several years and were qualified to perform the essential functions of their positions with or without reasonable accommodation.

18. Simmons and Patty lawfully used prescribed medications, including narcotics or opioids, to treat their disabilities.

19. Defendant had knowledge that Simmons and Patty lawfully used prescribed medications, including narcotics or opioids, during their employment for years before 2020.

20. Pursuant to a drug testing and substance abuse policy, Defendant engaged in periodic drug testing of employees, including pre-employment drug testing, random drug screening, and drug testing after workplace accidents.

21. On February 18, 2020, Defendant required Simmons to take a random drug test.

    a. Simmons was told his result showed "small opiates".

    b. Simmons explained to Darlene Schumacher, Defendant's facility Human Resources Manager, that he was prescribed medications for pain management.

    c. Schumacher took Simmons's badge, told him to go home, and said he would receive a call from the company doctor.

d. Simmons underwent a "return to work" physical on March 11, 2020. Dr. Matthew Hine examined Simmons and completed a "Fitness for Duty Evaluation" form and marked Simmons "Fit for duty without recommendations."

e. Simmons repeatedly called Schumacher and left messages regarding his medical release and asking to return to work. Finally, at the end of April, Schumacher called Simmons and told him that he needed to see Ron Flowers, Physician Assistant-Certified (PA-C) for another examination.

f. Simmons underwent a physical examination by Flowers, who gave him report that said he was "Fit for Duty."

g. Simmons informed Schumacher about the examination and work release he received from Flowers. Schumacher said she would need to talk to her "superiors" and get back to him.

h. Schumacher later called Simmons and told him he could not return to work unless he switched to a different medication.

i. Defendant did not allow Simmons to return to work.

j. Defendant terminated Simmons's employment effective December 31, 2020.

22. On February 21, 2020, Patty was required to take a drug test following a workplace injury caused by a machine malfunction.

a. After the injury, Patty was treated by Flowers and given a drug test,

6

Case 3:25-cv-00575     Document 1     Filed 05/21/25     Page 6 of 14 PageID #: 6

which returned positive for opioids.

b. Patty returned to Flowers the next day and was given a Functional Capacities Form stating he could "Return to Normal Work."

c. Patty returned to work, and then returned to Flowers on March 2, 2020, to have stitches removed. Flowers completed another Functional Capacities form, again stating "Return to Normal Work" and discharging Patty from care.

d. Patty worked three more days and then Schumacher told him that he would receive a call from the company's medical review officer because he had a positive drug screen.

e. Patty received a call from someone named Ashley who asked for his pharmacy records. He provided the information and then Ashley called back and said he could return to work.

f. Before he went back to work, Schumacher called Patty and said he could not return to work and that Dr. Hine's office would call him to schedule an appointment.

g. After examining Patty on April 1, 2020, Dr. Hine released Patty to return to work.

h. A few days later, Schumacher called Patty again and said Hine's release was not good enough and that he needed to return to Flowers and get a release for his "high risk" medication.

i. On April 30, 2020, Patty saw Flowers who gave him a form stating

7

he was "Fit for Duty" with a notation, "Patient is currently on very high risk medication, will have to defer to company policy."

j. Schumacher called Patty and said he either had to change his medication or he would lose his job.

k. Patty consulted with his own physician, who told Patty he could not change or stop his medication.

l. Patty left numerous messages for Schumacher stating his doctor advised he could not change his medication. Patty never heard back from Schumacher.

m. On August 27, 2020, Defendant sent Patty a separation notice effective August 5, 2020.

23. Defendant did not allow Simmons or Patty to return to their positions despite the clearances given by Defendant's own medical providers for them to return to work.

24. Defendant did not engage in an interactive process with Simmons or Patty to determine whether reasonable accommodations would have enabled them to return to work in their positions or other positions.

25. Since at least January 2020, Defendant denied employment opportunities to other employees at its Clinton, Tennessee, Jackson, Tennessee, and Aiken, South Carolina facilities who had physical impairments that substantially limited one or more major life activities and / or had a record of such impairments and who lawfully used certain prescription medications, including narcotics and opioids, for the treatment of

8

their disabling conditions. Specifically, Defendant refused to allow these individuals to work while using their medications and terminated their employment.

## STATEMENT OF CLAIMS

### COUNT I – DISCHARGE (42 U.S.C. § 12112(a))

26. Paragraphs 1 through 26 are incorporated by reference as if fully set forth herein.

27. Simmons, Patty, and the other Aggrieved Individuals were qualified individuals with disabilities as defined in the ADA.

28. Since at least January 2020, Defendant terminated the employment of Simmons, Patty, and other Aggrieved Individuals because of their lawful use of certain prescription medications, including narcotics and opioids, to treat their disabilities.

29. As a direct and proximate result of Defendant's actions, Simmons, Patty, and the other Aggrieved Individuals suffered actual pecuniary and non-pecuniary damages.

30. The unlawful practices described above were intentional and done with malice and/or reckless indifference to the federally protected rights of Simmons, Patty, and the other Aggrieved Individuals.

### COUNT II – DISCRIMINATORY QUALIFICATION STANDARD OR SELECTION CRITERIA (42 U.S.C. §§ 12112(b)(3), 12112(b)(6))

31. Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

32. Simmons, Patty, and the other Aggrieved Individuals were qualified

individuals with disabilities as defined in the ADA.

33. Since at least January 2020, Defendant's implementation of its drug testing and substance abuse policy was a standard, criteria, or method of administration that discriminated on the basis of disability.

34. Since at least January 2020, Defendant's implementation of its drug testing and substance abuse policy was a qualification standard, employment test, or other selection criteria that screened out or tended to screen out a class of individuals with disabilities, was not job-related for the positions held by Simmons, Patty, and other Aggrieved Individuals or consistent with business necessity, and was intentional disparate treatment of a class of individuals with disabilities.

35. As a direct and proximate result of Defendant's actions, Simmons, Patty, and the other Aggrieved Individuals suffered actual pecuniary and non-pecuniary damages.

36. The unlawful practices described above were intentional and done with malice and/or reckless indifference to the federally protected rights of Simmons, Patty, and the other Aggrieved Individuals.

**COUNT III – FAILURE TO ACCOMMODATE (42 U.S.C. § 12112(b)(5)(A))**

37. Paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

38. Simmons, Patty, and the other Aggrieved Individuals were qualified individuals with disabilities as defined in the ADA.

39. In the alternative to Count II, even if Defendant's implementation of its

drug testing and substance abuse policy since at least January 2020 was job-related for the positions held by Simmons, Patty, and other Aggrieved Individuals and consistent with business necessity, Defendant failed to consider or provide reasonable accommodations to enable Simmons, Patty, and other Aggrieved Individuals to work while lawfully using certain prescription medications, including narcotics and opioids, to treat their disabilities.

40. As a direct and proximate result of Defendant's actions, Simmons, Patty, and the other Aggrieved Individuals suffered actual pecuniary and non-pecuniary damages.

41. The unlawful practices described above were intentional and done with malice and/or reckless indifference to the federally protected rights of Simmons, Patty, and the other Aggrieved Individuals.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff Equal Employment Opportunity Commission respectfully requests that this Court:

A. Declare that Defendant violated the ADA by discriminating against Simmons, Patty, and the other Aggrieved Individuals;

B. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, subsidiaries, attorneys, and all persons acting in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of disability;

C. Order Defendant to institute and carry out policies, practices, and programs

which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices;

    D.    Order Defendant to institute a training program for all human resources personnel and supervisory employees to ensure compliance with federal laws and company policies on the ADA, including but not limited to providing reasonable accommodation;

    E.    Order Defendant to make whole Simmons, Patty, and the other Aggrieved Individuals by providing back pay with prejudgment interest, in amounts to be determined at trial, and all other affirmative relief necessary to eradicate the effects of these unlawful employment practices;

    F.    Order Defendant to make whole Simmons, Patty, and the other Aggrieved Individuals by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above, in amounts to be determined at trial;

    G.    Order Defendant to make whole Simmons, Patty, and the other Aggrieved Individuals by providing for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to, emotional and/or physical pain, suffering and mental anguish, humiliation, loss of enjoyment of life, in amounts to be determined at trial;

    H.    Order Defendant to pay Simmons, Patty, and the other Aggrieved Individuals punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

I. Grant such further relief as the Court deems necessary and proper in the public interest; and

J. Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

ANDREW B. ROGERS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

*s/Faye A. Williams*
FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 011730
faye.williams@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
200 Jefferson Ave., Ste. 1400
Memphis, TN 38103
Telephone (901) 685-4609

GARY SULLIVAN
Assistant Regional Attorney

AR Bar No. 92051
gary.sullivan@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Little Rock Area Office
820 Louisiana Street, Suite 200
Little Rock, AR 72201
(501) 900-6140

*Attorneys for Plaintiff EEOC*